# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **E.R. and I.R., Sr., Individually and as Parents and Natural Guardians of I.R., Jr., a minor,** : | |
| : | **CIVIL ACTION NO. 3:16-1593** |
| **Plaintiffs** : | **(JUDGE MANNION)** |
| **v.** : | |
| **STROUDSBURG AREA SCHOOL DISTRICT, COLONIAL INTERMEDIATE UNIT 20 and SUZANNE DELLORUSSO,** : | |
| : | |
| **Defendants** : | |
| : | |

## **MEMORANDUM**

Pending before the court are: (1) a motion to dismiss the plaintiffs' complaint filed on behalf of defendant Stroudsburg Area School District, ("School District"), (Doc. 31); (2) a motion to dismiss the plaintiffs' complaint on behalf of defendant Colonial Intermediate Unit 20, ("CIU"), (Doc. 33); and (3) a motion to dismiss the plaintiffs' complaint brought on behalf of defendant Dellorusso, ("Dellorusso"), (Doc. 45). Upon review of the defendants' motions and the materials related thereto, the motions will be granted as the court finds that the plaintiffs have failed to exhaust their administrative remedies with respect to their federal claims. Moreover, the court will decline to exercise supplemental jurisdiction over the plaintiffs' state law claims.

## I. PROCEDURAL HISTORY

By way of relevant background, the plaintiffs filed the instant action on August 1, 2016. (Doc. 1). An amended complaint was filed on November 14, 2016, in which the plaintiffs allege that all defendants failed to provide plaintiff I.R., Jr., with a free appropriate public education, ("FAPE""), thus unlawfully discriminating against him in violation of the 14th Amendment; all defendants violated the plaintiffs' rights under the Individuals with Disability Education Act, ("IDEA"), by failing to identify, evaluate and provide I.R., Jr., with a FAPE and by physically and verbally abusing him; defendant Dellorusso committed assault and battery against plaintiff I.R., Jr.,; defendant Dellorusso intentionally inflicted emotional distress upon plaintiff I.R., Jr.; defendant Dellorusso breached her fiduciary duty to I.R., Jr.; all defendants violated Section 504 of the Rehabilitation Act, 29 U.S.C. §794; and defendant Dellorusso engaged in willful misconduct. (Doc. 25). The defendant School District filed a motion to dismiss the plaintiffs' amended complaint on December 14, 2016, (Doc. 31), along with a brief in support thereof, (Doc. 32). The plaintiffs filed a brief in opposition to the defendant School District's motion to dismiss on February 8, 2017. (Doc. 39). A reply brief was filed by the defendant School District on February 22, 2107. (Doc. 41).

In the meantime, defendant CIU also filed a motion to dismiss the

2

plaintiffs' complaint on December 14, 2016. (Doc. 33). A supporting brief was filed on December 28, 2016. (Doc. 35). On February 8, 2017, the plaintiffs filed a brief in opposition to defendant CIU's motion to dismiss. (Doc. 40).

On March 16, 2017, defendant Dellorusso filed a motion to dismiss the plaintiffs' complaint, (Doc. 45), with a supporting brief following on March 30, 2017, (Doc. 48). The plaintiffs filed a brief in opposition to defendant Dellorusso's motion on May 1, 2017.

**II.     LEGAL STANDARD**

The defendants' motions to dismiss are brought pursuant to the provisions of [Fed.R.Civ.P. 12(b)(1) and 12(b)(6)](). "A motion to dismiss under Rule 12(b)(1) challenges the jurisdiction of the court to address the merits of the plaintiff's complaint." Vieth v. Pennsylvania, 188 F. Supp. 2d 532, 537 (M.D. Pa. 2002). The failure to exhaust administrative remedies is a jurisdictional issue and the appropriate device to raise this issue is a motion to dismiss under Rule 12(b)(1). See Batchelor v. Rose Tree Media Sch. Dist., 759 F.3d 266, 271 (3d Cir. 2014). A Rule 12(b)(1) dismissal is not a judgment on the merits, but only a determination that the court lacks the authority to hear the case. Swope v. Central York Sch. Dist., 796 F. Supp. 2d 592, 599 (M.D. Pa. 2011). Because the district court is a court of limited jurisdiction, the

3

burden of establishing jurisdiction always rests upon the party asserting it. See Kokkonen v. Guardian Life. Ins. Co. of America, 511 U.S. 375, 377 (1994).

An attack on the court's jurisdiction may be either "facial" or "factual" and the "distinction determines how the pleading must be reviewed." Constitution Party of Pennsylvania v. Aichele, 757 F.3d 347, 357 (3d Cir. 2014). A facial attack tests the sufficiency of the pleadings, while a factual attack challenges whether a plaintiff's claims fail to comport factually with jurisdictional prerequisites. Id. at 358; see also S.D. v. Haddon Heights Bd. of Educ., 833 F.3d 389, 394 n. 5 (3d Cir. 2016). If the defendant brings a factual attack, the district court may look outside the pleadings to ascertain facts needed to determine whether jurisdiction exists. Id.

Reviewing a facial attack, a district court must accept the allegations stated in a plaintiff's complaint and review "only whether the allegations on the face of the complaint, taken as true, allege facts sufficient to invoke the jurisdiction of the district court." Taliaferro v. Darby Twp. Zoning Bd., 458 F.3d 181, 188 (3d Cir. 2006) (internal quotation marks omitted). "Thus, a facial attack calls for a district court to apply the same standard of review it would use in considering a motion to dismiss under Rule 12(b)(6), i.e., construing the alleged facts in favor of the nonmoving party. This is in marked contrast

4

to the standard of review applicable to a factual attack, in which a court may weigh and 'consider evidence outside the pleadings.'" Aichele, 757 F.3d at 358 (quoting Gould Elecs., Inc. v. United States, 220 F.3d 169, 176 (3d Cir. 2000)) (internal citation omitted). An attack on jurisdiction based on a failure to exhaust remedies that is filed prior to answering the complaint is usually, "by definition, a facial attack" on the pleadings unless the defendant has offered factual averments in support of its motion. Haddon Heights, 833 F.3d at 394 n. 5.

Rule 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated, Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005), and dismissal is appropriate only if, accepting all of the facts alleged in the complaint as true, the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face," Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1974 (2007) (abrogating "no set of facts" language found in Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). The facts alleged must be sufficient to "raise a right to relief above the speculative level." Twombly, 550 U.S. 544, 127 S. Ct. at 1965. This requirement "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of" necessary

5

elements of the plaintiff's cause of action. Id. Furthermore, in order to satisfy federal pleading requirements, the plaintiff must "provide the grounds of his entitlement to relief," which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008) (brackets and quotations marks omitted) (quoting Twombly, 550 U.S. 544, 127 S. Ct. at 1964-65).

In considering a motion to dismiss, the court generally relies on the complaint, attached exhibits, and matters of public record. *See* Sands v. McCormick, 502 F.3d 263 (3d Cir. 2007). The court may also consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] documents." Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993). Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 560 (3d Cir. 2002). However, the court may not rely on other parts of the record in determining a motion to dismiss. *See* Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994).

Generally, the court should grant leave to amend a complaint before dismissing it as merely deficient. *See*, e.g., Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 252 (3d Cir. 2007); Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000). "Dismissal without leave to amend is justified only on the grounds of bad faith, undue delay, prejudice, or futility." Alston v. Parker, 363 F.3d 229, 236 (3d Cir. 2004).

### III.  DISCUSSION

The allegations of the plaintiffs' complaint provide that I.R., Jr., was born on March 14, 2005 and was eleven years old at the time the instant action was filed.[1] He has been diagnosed as being profoundly developmentally delayed with an autism spectrum disorder and a moderate intellectual disability which have impacted development in the areas of social interaction and communication skills. His specific condition renders him low functioning with impairments of emotional, verbal, speech and physical behavior impairments.

In October of 2014, the plaintiffs' complaint provides that E.R. and I.R.,

---

[1] For purposes of the instant motions to dismiss, the allegations of the plaintiffs' complaint are accepted as true.

Sr., enrolled I.R., Jr., in the Stroudsburg Area School District, and requested that he be placed at the Chipperfield elementary location of the District in the autistic support class. The parents' request was denied and I.R., Jr., was placed in defendant CIU's classroom at the East Stroudsburg School District.

From the time I.R., Jr., was placed in the CIU classroom at East Stroudsburg until November 12, 2014, defendant Dellorusso was an associate teacher. During the course of her duties as an associate teacher, defendant Dellorusso continually and systematically employed the use of aversive techniques which were deliberate activities to establish a negative association with a specific behavior. Defendant Dellorusso used adverse techniques in an attempt to redirect I.R., Jr., and her special needs students. These techniques included, but were not limited to: pushing I.R., Jr., in the neck; using improper methods to restrain I.R., Jr.; violently pushing I.R., Jr., to the floor; violently pushing I.R., Jr., in the upper chest and shoulder areas; acting aggressively towards I.R., Jr.; pulling I.R., Jr.'s, hair; using an open hand to hit I.R., Jr., in the arm in an aggressive manner; grabbing I.R., Jr., by the neck; choking I.R., Jr.; assaulting I.R., Jr.; picking I.R., Jr., up to his feet from the floor by his hair; slapping the arm of I.R., Jr., hard enough to inflict pain and slapping I.R., Jr., with an open hand.

As to these techniques, the plaintiffs specifically allege that, on a date

certain between October 1, 2014 and November 13, 2014, while with I.R., Jr., near an elevator in the hallway, defendant Dellorusso pushed I.R., Jr., by the neck. This action was witnessed by I.R., Jr.'s, teacher, Ashley Fehr.

On another occasion between October 1, 2014 and November 13, 2014, I.R., Jr., was having an outburst and was placed in a safe corner so as to calm down. I.R., Jr., attempted to get out of the corner by trying to climb over a makeshift wall. As he did so, the plaintiffs allege that defendant Dellorusso violently pushed I.R., Jr., in the upper chest and shoulder area to the floor. This action was again witnessed by Ashley Fehr.

Again, between October 1, 2014 and November 13, 2014, defendant Dellorusso pulled I.R., Jr., by the hair, which was witnessed by a CIU employee, Brian Labar. On yet another occasion during this time period, defendant Dellorusso used an open hand to hit the arm of I.R., Jr., in an aggressive manner. This was also witnessed by Mr. Labar.

On another occasion, defendant Dellorusso grabbed I.R., Jr., by the neck, which was witnessed by Mr. Labar. In response to questioning by Mr. Labar as to why she engaged in such action, defendant Dellorusso allegedly stated that I.R., Jr., was attempting to choke her, so she choked him back.

Again, during this same time frame, the complaint alleges that Defendant Dellorusso removed I.R., Jr., and other students from the

9

classroom due to another child having an outburst. At this time, defendant Dellorusso pushed I.R., Jr., into a wall. This action was witnessed by Ms. Fehr, Mr. Labar, and another student.

On another occasion, while I.R., Jr., was in the classroom having an outburst, he was sitting, lying and screaming on the floor. At this time, defendant Dellorusso picked I.R., Jr., up to his feet by pulling a braid on his hair. This action was witnessed by Mr. Labar.

On an occasion when I.R., Jr., was attempting to get out of the safe corner and was reaching for defendant Dellorusso, she used her open hand to slap the arm of I.R., Jr., hard enough to inflict pain.

Eventually, the plaintiffs allege that law enforcement was notified with respect to the actions taken against I.R., Jr., by defendant Dellorusso. The allegations of abuse were investigated and established and, as a result, defendant Dellorusso was charged criminally. Defendant Dellorusso pled guilty and was incarcerated for a period of time.

Despite the fact that the defendant School District and defendant CIU were aware of the allegations against defendant Dellorusso, the plaintiffs allege that neither informed I.R., Jr.'s, parents. As a result, I.R., Jr., remained in the autistic support classroom at East Stroudsburg where the abuse had occurred. It was not until March of 2015, when a newspaper reporter brought

it to their attention did I.R., Jr.'s, parents learn of what had happened. Upon learning this information, I.R., Jr.'s, parents removed him from the autistic support classroom and medical attention was sought for him.

In April of 2015, the plaintiffs allege that I.R., Jr.'s, parents presented a note from his treating physician requesting homebound education for him. In response, neither defendant School District nor defendant CIU provided homebound instruction. Instead, the complaint alleges that the parents were convinced to place I.R., Jr., in the autistic support classroom at Chipperfield Elementary, where they had originally requested that he be placed.

I.R., Jr., was placed at Chipperfield Elementary beginning in April of 2015 through October 26, 2015. While there, the plaintiffs allege that staff members of the defendant School District and defendant CIU continued to physically restrain I.R., Jr., on occasion, against the wishes and permission of his parents.

Overall, the plaintiffs allege that defendant School District and defendant CIU failed to provide I.R., Jr., a FAPE in a setting in which he would not be restrained. As a result of the abuse suffered by I.R., Jr., at the hands of defendant Dellorusso, his parents allege that he has required treatment with a forensic counselor, who has explained to the defendants that I.R., Jr., has a negative association with the abuse that he suffered at the hands of

defendant Dellorusso, and that such negative association is repeated each time he is restrained at school. Based upon this negative association, the plaintiffs allege that I.R., Jr.'s, therapist has recommended that he not be subjected to hands-on restraints. Despite this, the plaintiffs allege that the defendant School District and defendant CIU have failed to honor this recommendation. As a result of the defendants' failure to provide a plan for the education of I.R., Jr., that calls for no hands-on restraints of him and their failure to provide him homebound education, the plaintiffs allege that he has been unable to attend school since October 26, 2015.

The plaintiffs' complaint provides that an administrative process on the issues of whether I.R., Jr.'s, placement, as well as the IEP proposed by the defendant School District were appropriate, was conducted before the Honorable William F. Culleton, Esquire, Chief Hearing Officer. To this extent, hearings were held on January 14, February 17, February 29 and March 30, 2016, at which multiple witnesses testified and various documents were entered into evidence. The plaintiffs allege that they, the defendant School District and defendant CIU participated in the administrative proceedings.[2] A copy of the decision of the hearing officer is appended to the plaintiffs'

---

[2] The decision of the special hearing officer attached to the plaintiffs' complaint as Exhibit A reflects that only the parents and the defendant School District were parties to the hearing. (Doc. 25, Ex. A).

complaint and demonstrates that the defendant School District requested the due process hearing in order to determine whether or not it has offered a FAPE to I.R., Jr., and to request an order authorizing it to re-evaluate I.R., Jr., without parental consent. The hearing officer noted that the parents did not file for due process and did not request a hearing officer order. The hearing officer listed the issues considered: (1) Does the June 10, 2015 IEP, as revised, offer Student a free appropriate public education as defined in the IDEA? (2) Is Student's current placement in a full-time autistic support classroom operated by the governing Intermediate Unit and located in the Student's neighborhood school an appropriate placement, notwithstanding the classroom program's use of restraint? and (3) Should the Hearing Officer authorize the District to proceed with re-evaluation of the Student, notwithstanding Parents' revocation and withholding of consent? A decision was issued on May 3, 2016, in which the hearing officer concluded that the School District had offered I.R., Jr., a FAPE and authorized the defendant School District to re-evaluate I.R., Jr., in the absence of parental consent. In the instant amended complaint, the plaintiffs allege that they are using this action as an appeal from the decision of the hearing officer.

With respect to the claims in the plaintiffs' amended complaint, as discussed above, the plaintiffs allege in Count I that the failure of the

13

defendants to provide I.R., Jr., with a FAPE constitutes unlawful discrimination against him and other autistic children in violation of the equal protection and due process clauses of the 14th Amendment. In Count II the plaintiffs allege that the defendants violated the IDEA by failing to identify, evaluate and provide I.R., Jr., with a FAPE and by physically and verbally abusing him. Counts III, IV and V allege state law claims for assault and battery, intentional infliction of emotional distress, and breach of fiduciary duty against defendant Dellorusso only. Count VI is brought against all defendants under the Rehabilitation Act and alleges that the defendants discriminated against I.R., Jr., because of his disabilities in that they failed to provide him with the same protection that all other students were provided by failing to protect him from not having to be subjected to physical and mental abuse by defendant Dellorusso. Finally, Count VII is another state law claim for willful misconduct against defendant Dellorusso only.

In their motions to dismiss, all defendants argue that the court lacks subject matter jurisdiction over the plaintiffs' claims based upon their failure to exhaust administrative remedies with respect to the claims which they now attempt to raise. In this regard, the IDEA was enacted, in part, to "ensure that all children with disabilities have available to them a free appropriate public education [ ("FAPE") ] that emphasizes special education and related services

designed to meet their unique needs." 20 U.S.C. §1400(d)(1)(A). The IDEA conditions a state's receipt of federal funds for special education programs on its implementation of "policies and procedures to ensure that . . . [a FAPE] is available to all children with disabilities." 20 U.S.C. §1412(a)(1)(A). As a recipient of federal funds, Pennsylvania has adopted the IDEA. See 22 Pa. Code §14.101.

"The 'primary vehicle' for implementing a FAPE is the Individualized Educational Program [("IEP")]." Melissa S. v. Sch. Dist. of Pittsburgh, 183 Fed.Appx. 184, 186-87 (3d Cir. 2006). "The IEP consists of a detailed written statement arrived at by a multi-disciplinary team summarizing the child's abilities, outlining the goals for the child's education and specifying the services the child will receive." Polk v. Cent. Susquehanna Intermediate Unit 16, 853 F.2d 171, 173 (3d Cir. 1988) (citing 30 C.F.R. §300.347).

States must also set up procedures under the IDEA to ensure that children with disabilities and their parents are afforded a due process hearing concerning "any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a [FAPE] to such child." 20 U.S.C. §1415(b)(6)(A). Exhaustion of the administrative remedies available under the IDEA "serves the purpose of developing the record for review on appeal, encouraging parents and the local school district to work together [,] . . . and

15

allowing the education agencies to apply their expertise and correct their own errors." Batchelor, 759 F.3d at 275 (internal citations omitted). After exhausting the state's administrative remedy, parties unsatisfied with the result may seek judicial review in federal court. Id. §1415(i)(2)(A). A federal court may then grant "such relief as [it] determines is appropriate." Id. §1415(i)(2)(c).

The IDEA requires exhaustion not only in actions brought directly under the IDEA, but also "in non-IDEA actions where the plaintiff seeks relief that can be obtained under the IDEA." Id. at 272. This is directly in accordance with §1415(l) of the IDEA statute. Section 1415(l) provides:

> Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990 [42 U.S.C. §12101 et seq.], title V of the Rehabilitation Act of 1973 [29 U.S.C. §791 et seq.], or other Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) shall be exhausted to the same extent as would be required had the action been brought under this subchapter.

20 U.S.C. §1415(l). "This provision bars plaintiffs from circumventing [the] IDEA's exhaustion requirement by taking claims that could have been brought under [the] IDEA and repackaging them as claims under some other statute." Batchelor, 759 F.3d at 272. To avoid this result, there is a "strong policy . . . requiring exhaustion of remedies available under the IDEA." Id. at 275 (citing

16

Komninos v. Upper Saddle River Bd. of Educ., 13 F.3d 775, 778 (3d Cir. 1994)).

Although several exceptions exist to the IDEA's administrative exhaustion requirement, none are argued to apply here. The Third Circuit has recognized exceptions to the exhaustion requirement where: (1) exhaustion would be futile; (2) the issue presented is purely a legal question; (3) where the administrative agency cannot grant relief; and (4) where exhaustion would cause severe or irreparable harm (an emergency situation). Komninos, 13 F.3d at 778. As it relates to the third exception, however, the Third Circuit in Batchelor clarified that the relief sought does "not dictate the applicability of the IDEA." 759 F.3d at 277. "[T]he [d]istrict [c]ourt is not constrained in the relief it is authorized to grant by the remedies sought in the [plaintiff's] [c]omplaint." Id. at 276. Instead, it is the nature of the claims and the governing law that determines the relief. Id. (citing Fed.R.Civ.P. 54(c)).

In this case, the plaintiffs argue that they have exhausted their administrative remedies by way of the due process hearing that resulted in the hearing decision of May 3, 2016. The court finds that the due process hearing requested by the defendant School District does not operate to satisfy the exhaustion requirement for the claims raised by the plaintiffs in the instant action.

Initially, in his decision, the hearing officer was careful to note that the School District, not the plaintiffs, requested the due process hearing and that the plaintiffs had never requested a hearing officer order. Moreover, the gravamen of the plaintiffs' amended complaint in this case relates to I.R., Jr.'s, time in the CIU classroom at East Stroudsburg from October 2014 through November 2014, the actions of defendant Dellorusso during that time, and the defendants' response thereto. The issues addressed by the Pennsylvania Special Education Hearing Officer, as requested by the defendant School District, related to the appropriateness of the IEP put in place on June 10, 2015, after I.R., Jr., had been removed from East Stroudsburg and placed in Chipperfield Elementary; whether I.R., Jr.'s, placement in Chipperfield Elementary was an appropriate placement, notwithstanding the classroom program's use of restraints; and whether the hearing officer should authorize the School District to re-evaluate I.R., Jr., notwithstanding his parents' revocation and withholding of consent. There is no indication that the matters raised by the plaintiffs in their amended complaint relating to I.R., Jr.'s, time at East Stroudsburg and his exposure to the actions of defendant Dellorusso were substantively raised and addressed at the due process hearing requested by the defendant School District. The failure of the plaintiffs to raise the issues presented in the instant action at a

18

due process hearing preclude them from pursuing their IDEA claim, as well as their claims under Section 504 and the 14th Amendment, in this court. Accordingly, defendants' motions are granted and the plaintiff's federal claims alleging violations of the 14th Amendment, (Count I), the IDEA, (Count II), and violations of Section 504 under the Rehabilitation Act, (Count V), are dismissed without prejudice.

As to the remaining Counts III, IV, V and VII, the court will decline to exercise supplemental jurisdiction over the plaintiffs' state law tort claims against defendant Dellorusso individually. District courts may decline to exercise supplemental jurisdiction over a state law claim if the district court has dismissed all claims over which it has original jurisdiction. 28 U.S.C. §1367(c)(3). When deciding whether to exercise supplemental jurisdiction, "a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity." City of Chicago v. Int'l Coll. of Surgeons, 522 U.S. 156, 173 (1997) (quoting Carnegie-Mellon Univ. v. Cahill, 484 U.S. 343, 350 (1988)). The Third Circuit has held that "where the claim over which the district court has original jurisdiction is dismissed before trial, the district court must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for

doing so." Hedges v. Musco, 204 F.3d 109, 123 (3d Cir. 2000) (quoting Borough of West Mifflin v. Lancaster, 45 F.3d 780, 788 (3d Cir. 1995)). The court can find no justification for exercising jurisdiction over the plaintiffs' state law claims against Dellorusso.

## IV. CONCLUSION

Based upon the foregoing, the defendants' motions to dismiss the plaintiffs' amended complaint for failure to exhaust administrative remedies, (Doc. 31, Doc. 33, Doc. 35), will be granted and the plaintiffs' amended complaint will be dismissed without prejudice in this respect. Further, the court will decline to exercise supplemental jurisdiction over the plaintiffs' state law claims. An appropriate order shall issue.

*s/Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Date: September 29, 2017**

O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2016 MEMORANDA\16-1593-01.wpd